UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:16-604 |
| | § | CIVIL NO. 2:18-228 |
| MICHAEL COOKE FASELER, II, | § | |
|   Defendant/Movant. | § | |

**MEMORANDUM OPINION & ORDER**

Defendant/Movant Michael Cooke Faseler, II, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, memorandum in support, and supplemental motion under 28 U.S.C. § 2255. D.E. 56, 56-2, 65.[1] Pending before the Court are the United States of America's (the "Government") motion and supplemental motion for judgment on the record (D.E. 64, 71), to which Movant has responded (D.E 66, 72, 73).

**I. BACKGROUND**

Movant was charged with being a felon in possession of two firearms, which were found on his person after sheriff's deputies were dispatched to a disturbance in which Movant was involved. Movant filed a motion to suppress evidence of the firearms on the grounds the deputies did not have reasonable suspicion to conduct the pat-down search that uncovered the weapons.

The Court conducted an evidentiary hearing on Movant's motion to suppress, during which Nueces County Sheriff's Deputies Luis Munoz and Eusebio Lerma testified regarding the events that led to Movant's arrest. *See* 9/21/2016 Supp. Hrg. Tr., D.E. 48. On June 29, 2016, partners Munoz and Lerma were dispatched to a weapons disturbance off Highway 286 and FM 43 at a fireworks stand located on property owned by Movant's father. Witnesses provided a

---

1. Docket entries refer to the criminal case.

description of two males, one in a red shirt and one in a black shirt and black jeans, who were traveling in a black truck. Deputies learned that the suspect, Movant Michael Faseler, made comments to individuals at the fireworks stand that he was "going to shoot the place up." Two other officers warned the deputies via radio that local law enforcement had previous disturbance calls at the Faseler residence and Movant was known to be violent.

When the deputies arrived at the fireworks stand, they spoke to a visibly shaken Justin Kemp. Kemp was the manager of the fireworks stand and stated that the disturbance involved an alleged non-payment of rental income and that Movant had already left the scene. The deputies left but returned an hour later when they received another call stating that Movant had come back to the fireworks stand. Upon their second arrival, the deputies observed two males matching the description provided by the witnesses walking from the fireworks stand to a black truck. The deputies detained the men on suspicion of committing the Texas offense of terroristic threat. They identified Movant, who was wearing a black shirt and black jeans, and his companion, Steven Engel.

When Deputy Munoz told Movant he was going to pat him down for officer safety, Movant admitted he had two guns on his person. Deputy Munoz performed the pat down and retrieved the two weapons, both of which had a round in the chamber. He also found ammunition in Movant's pocket. Movant had a prior felony conviction and was prohibited from carrying a firearm. He was arrested for terroristic threat and being a felon in possession of a firearm.

After the Government presented its evidence, the Court asked Movant's counsel if he had any witnesses or evidence to present. Counsel replied that he did not. In closing, Movant's counsel argued that Deputy Munoz was not justified in conducting the pat down, and the deputies could not cite any specific articulable facts that would justify their belief that Movant

was armed and dangerous. The Government countered that the testimony adduced at the hearing that Movant threatened to "shoot the place up," together with Movant's admission that he was carrying guns on his person, supported Deputy Munoz' execution of the pat-down search. The Court agreed with the Government and denied Movant's motion to suppress.

On October 17, 2016, Movant entered a conditional guilty plea to Count One of the Indictment, retaining his right to appeal the denial of his motion to suppress.

The Presentence Investigation Report assigned Movant a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2) because he had at least two prior felony convictions for either a crime of violence or a controlled substance offense. Two levels were added pursuant to § 2K2.1(b)(1)(A) because the offense involved 3 to 7 firearms.[2] Movant was given a three-level adjustment for acceptance of responsibility. The resulting advisory Guideline range for Level 23, Criminal History Category V, was 84–105 months. On November 28, 2016, the Court sentenced Movant to 70 months' imprisonment and 3 years' supervised release. Judgment was entered the following day.

In accordance with his conditional plea, Movant appealed the denial of his motion to suppress. On January 24, 2018, the Fifth Circuit affirmed the denial of Movant's motion to suppress and affirmed his conviction and sentence. Movant did not file a petition for certiorari with the Supreme Court. His conviction became final on April 24, 2018. He filed the present motion on July 30, 2018. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant claims that defense counsel was constitutionally ineffective because he:

1. Failed to adequately investigate and successfully litigate the motion to suppress, and

2. Failed to object to the four-level enhancement under U.S.S.G. § 2K2.1(a)(2).

---

2. The deputies found a third firearm in the bed of Movant's truck at the time of his arrest. PSR ¶ 7.

## III. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

### B. Motion to Suppress

Movant claims his counsel was constitutionally ineffective for failing to successfully litigate a motion to suppress the firearms seized by deputies on June 29, 2016. Specifically, Movant alleges counsel did not interview any witnesses, failed to subpoena any witnesses to testify on Movant's behalf, and prohibited Movant from testifying at the suppression hearing. This resulted in Movant's inability to demonstrate that Kemp set him up with a false allegation of terroristic threat.

#### 1. Failure to Investigate

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [case]." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). *See also United States. v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014). Moreover, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014)

(quoting *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). To prevail on such a claim, "'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Id.* (quoting *Day v. Quartermain*, 566 F.3d 527, 538 (5th Cir. 2009)).

Movant claims "Mr. W" would have testified that Movant "was never violent, never made any threats, no[r] were there ever any incidents involving rent or payment." D.E. 72, p. 4. Movant maintains that Engel would have testified that he and Movant went to the bank on the morning in question and therefore could not have made threats at the fireworks stand like Kemp claimed. Counsel also should have "obtained statements and/or affidavits from the bank employees to verify that [Movant] was at the bank that morning." *Id.*

Movant has failed to identify the bank he visited or name any specific employees on duty the morning of June 29, 2016, nor has he provided an actual name for "Mr. W." Movant also offers no support for any of his proposed witnesses' availability or willingness to testify at the suppression hearing or the content of their testimony, aside from his own self-serving declarations.[3] Accordingly, his failure-to-investigate claim must fail.

### 2. Failure to Allow Movant to Testify

Movant states that he "was present and willing to testify at the suppression hearing regarding the alleged incident, including the fact that [Kemp] had told [Movant] to come over to the fireworks stand to collect the rent, and had reported a false 'terroristic threat' complaint to

---

3. Attached to one of Movant's filings is a series of purported emails signed by "Ram" and dated February 11–27, 2019. One says, "No. I checked with everyone in the office. We have no idea who those people are." D.E. 72-1, p. 3. Another reads, "I have already stated that Mr. W Fireworks did not call in a police report and do not know the people you mentioned. This text is proof of this fact. You can use[.]" *Id.* p. 4. These emails are unauthenticated, do not include the name or email address of the sender, provide no context as to who "these people" are, and do nothing to show that "Ram" or anyone affiliated with Mr. W. Fireworks was available and willing to testify on Movant's behalf back in 2016.

police when in fact [Movant] had not even been to the fireworks stand." D.E. 56-2, pp. 12–13. Instead, Kemp "was merely attempting to lure [Movant] to the fireworks stand and have him arrested for a crime that never even occurred." *Id.* at 13. However, defense counsel "kept [Movant] from testifying himself regarding the facts of the alleged incident." *Id.*

A criminal defendant has a fundamental right to testify in his own behalf. *United States v. Brown*, 217 F.3d 247, 258 (5th Cir. 2000), vacated on other grounds by *Randle v. United States*, 121 S.Ct. 1072 (2001); *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999). This right is granted to the defendant personally and not to his counsel. *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citing *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992)). However,

> a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or from the defendant's failure to notify the trial court of the desire to do so.

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

Movant's trial counsel, Jason Wolf, submitted a sworn affidavit stating, "I never prevented Mr. Faseler from taking the witness stand. I asked him if he wanted to testify and he said no." Wolf Aff., D.E. 69. Movant responded that he "never said no to Counselor Wolf because [he] was never asked by Mr. Wolf if he wanted to take the witness stand." D.E. 72 at 2. Instead, Movant states, "I did inform my attorney, Mr. Wolf, to allow me to testify because the jury was hearing only one side of the story and not all the facts." Faseler Aff., D.E. 72-2 p. 5 ¶ 31. It is unclear when this occurred, as there was no jury at the suppression hearing. Movant states that he knew he had the right to testify on his own behalf and claims he made "numerous outbursts" in court "due to [his] urgency to take the stand and testify as to his side of the story," after which "the Court instructed Mr. Wolf to restrain his client." D.E. 73, p. 2. However, the

7

record shows that Movant was silent throughout the suppression hearing and made no outbursts at any proceeding in this case. Finally, Movant stated under oath at rearraignment that he was satisfied with counsel's representation. 10/17/2016 Rearraign. Tr., D.E. 49 at 13:5-7.

There is nothing in the record indicating that Movant alerted counsel or the Court that he wished to testify at any time, and he expressly waived his right to testify at trial when he pled guilty. Because Movant failed to show that counsel prevented him from exercising his right to testify or that he alerted the Court to any disagreement with counsel, waiver is presumed.

### 3. Prejudice

Finally, Movant has failed to demonstrate that the outcome of the suppression hearing would have been different had he or any of his purported alibi witnesses been called to testify. Even assuming Movant is correct that Kemp lied to law enforcement and the whole 911 call was a setup, this evidence would only serve as a defense to the terroristic threat charge. The issue at the suppression hearing was whether the deputies had a reasonable belief that Movant was armed in order to justify a pat-down search, based on the information they had at the time. The Fifth Circuit held on appeal that they did:

> The deputies were entitled to rely on the information they received from the police dispatcher, their fellow officers, and eyewitnesses when deciding to conduct a frisk for weapons. *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008). Although the dispatch indicated no weapons were displayed and the deputies did not see a weapon, it was reasonable for them to infer Faseler was likely armed and a danger to others based on his threat to "shoot the place up", and his prior violence towards law enforcement. *United States v. Estrada*, 459 F.3d 627, 631–33 (5th Cir. 2006); *United States v. Michelletti*, 13 F.3d 838, 840–841 (5th Cir. 1994) (en banc).
>
> Therefore, contrary to his assertion, the deputies had reasonable, articulable suspicion he was armed and dangerous, to justify the pat-down search. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Estrada*, 459 F.3d at 631.

*United States v. Faseler*, 709 F. App'x 308, 308–09 (5th Cir. 2018) (unpublished); D.E. 55.

Movant has failed to demonstrate both deficient performance and prejudice regarding counsel's failure to investigate or to call Movant or other witnesses at the suppression hearing. Accordingly, this claim is denied.

**C. U.S.S.G. § 2K2.1(a)(2) Enhancement**

Movant next claims counsel was ineffective for failing to object to the four-level enhancement pursuant to U.S.S.G. § 2K2.1(a)(2). According to Movant, his 2007 convictions for possession of methamphetamine and possession of certain chemicals with the intent to manufacture controlled substances and his 2011 robbery conviction did not qualify for enhancement purposes, citing the Supreme Court's recent decisions in *Johnson*, *Dimaya*, and *Mathis*.

Under the Armed Career Criminal Act (ACCA), a person who possesses a gun in violation of 18 U.S.C. § 922(g) after sustaining three prior convictions for a "serious drug offense" or "violent felony" faces a minimum prison term of 15 years and a maximum of life. 18 U.S.C. § 924(e)(1). The ACCA defines the term "violent felony" to mean any felony that: (i) "has as an element the use, attempted use, or threatened use of physical force against the person of another;" (ii) "is burglary, arson, or extortion, [or] involves use of explosives," or "*otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. §924(e)(2)(b) (emphasis added). The preceding italicized text—also known as the "residual clause"—was declared unconstitutionally vague by the Supreme Court in *Johnson v. United States*, 135 S.Ct. 2551, 2563 (2015). Citing *Johnson*, the Supreme Court declared that a similarly-worded residual clause defining "crime of violence," as incorporated into the Immigration and Nationality Act's (INA) definition of aggravated felony, was also unconstitutionally vague. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1210 (2018).

Movant's sentence was not enhanced using a residual clause like those declared unconstitutional under *Johnson* and *Dimaya*. Movant's sentence was enhanced because he had two or more previous felony convictions for either a "crime of violence" or a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(2). Those terms are defined as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).
>
> (b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2.

The Fifth Circuit has explicitly held that Texas robbery qualifies as an enumerated "crime of violence" under the Sentencing Guidelines. *See United States v. Flores-Vasquez*, 641 F.3d 667, 670 n.1 (5th Cir. 2011); *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380–81 (5th Cir. 2006), *overruled on other grounds by United States v. Rodriguez*, 711 F.3d 541, 547–63 (5th Cir. 2013) (en banc). Movant argues that "Texas defines robbery more broadly than the Guidelines," citing *Mathis v. United States*, 136 S. Ct. 2243 (2016). However, since *Mathis*, the Fifth Circuit has "reaffirm[ed] that Texas robbery is no broader than generic robbery." *United States v. Nunez-Medrano*, 751 F. App'x 494, 500 (5th Cir. 2018). Movant's 2011 Texas robbery conviction is therefore a crime of violence under § 2K2.1(a)(2). He offers no argument or

explanation as to why his 2007 convictions for possession of methamphetamine and certain chemicals with the intent to manufacture controlled substances (methamphetamine) do not qualify as controlled substance offenses.

Movant's counsel was not ineffective for failing to make a frivolous objection to the enhancement under U.S.S.G. § 2K2.1(a)(2). *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Accordingly, this claim is denied.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V. CONCLUSION

For the foregoing reasons, the Government's motion and supplemental motion for judgment on the record (D.E. 64, 71) are **GRANTED**; Movant's motion and supplemental motion under 28 U.S.C. § 2255 (D.E. 56, 65) are **DENIED**; and Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 18th day of July, 2019.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE